UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| INTEGRITY GLOBAL SECURITY, LLC, a Delaware limited liability company and GREEN HILLS SOFTWARE, INC. a Delaware corporation, | § § § § § § § | |
| Plaintiffs. | § § | |
| vs. | § § | Civil Action No. 1:15-cv-685 |
| DELL MARKETING L.P., a Texas limited partnership, DELL FEDERAL SYSTEMS, L.P., a Texas limited partnership and DELL PRODUCTS, L.P., a Texas limited partnership, | § § § § § § § | |
| Defendants | § | **JURY DEMAND REQUESTED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs INTEGRITY Global Security, LLC and Green Hills Software, Inc. (collectively, "Plaintiffs") file their original complaint against Defendants Dell Marketing, L.P., Dell Federal Systems, L.P. and Dell Products, L.P. (collectively, "Dell" or "Defendants"). In support of this original complaint, Plaintiffs show the following:

**I.**

**PARTIES AND SERVICE**

1. Plaintiff INTEGRITY Global Security, LLC ("IGS") is a Delaware limited liability company with its principal of business in Santa Barbara, California. IGS is wholly owned by Plaintiff Green Hills Software, Inc.

2. Plaintiff Green Hills Software, Inc. ("GHS") is a Delaware corporation with its principal place of business in Santa Barbara, California. GHS is the sole owner, member and manager of IGS.

3. Defendant Dell Marketing, L.P. ("Dell Marketing") is a Texas limited partnership with its principal place of business in Round Rock, Texas.

4. Defendant Dell Federal Systems, L.P. ("Dell Federal") is a Texas limited partnership with its principal place of business in Round Rock, Texas.

5. Dell Products, L.P. ("Dell Products") is a Texas limited partnership with its principal place of business in Round Rock, Texas. (Dell Marketing, Dell Federal and Dell Products sometimes are collectively referred to herein as "Dell.")

**II.**

**JURISDICTION AND VENUE**

The subject matter and amount in controversy in this action are within the jurisdiction of the Court.

6. The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District under 28 U.S.C. § 1391 because (a) Dell's principal place of business is located in Williamson County, Texas and (b) all or part of the acts at issue in this matter occurred within this Judicial District. Venue is also proper in this District because the parties contractually agreed that any action filed by IGS and GHS against Dell for breach of the contract at issue in this case must be filed in the state or federal courts in Travis County, Texas.

### III

### BACKGROUND FACTS

8. GHS is a developer of embedded software solutions. GHS developed and owns the rights to the INTEGRITY Real Time Operating System ("INTEGRITY RTOS") and the INTEGRITY Operating System ("IOS"). The IOS, which is based on the INTEGRITY RTOS, is designed to maintain the security for multiple levels of classified and unclassified information on networks and computer systems. In performing this function, the IOS uses Green Hills' INTEGRITY RTOS separation kernel which permits multilevel, *e.g.* top secret, secret, confidential and unclassified operations, to be stored and used on a single computer by partitioning, isolating and controlling information flow and operations.

9. IGS' business is to develop and market the IOS for the needs of businesses and U.S. government agencies and military commands that handle classified and unclassified data. IGS has developed a recognized expertise in identifying security requirements and developing solutions for customers.

10. Dell Federal is focused on sales of computer hardware and technology solutions to the federal government. Dell Marketing also markets hardware and solutions to government and private concerns, as well as resellers. Dell Products provides the computer hardware

products for such sales.  In addition, at all relevant times, IGS was a third-party supplier to Dell Products and its affiliates.

11.     In September 2008, the INTEGRITY RTOS separation kernel was evaluated by the National Security Agency ("NSA") and certified by National Information Assurance Partnership ("NIAP") to EAL 6+ High Robustness for the protection of classified information. On September 6, 2011, the IOS on Dell hardware received accreditation at security level PL3 (single level top secret), with respect to an Air Force application.  On March 15, 2012, IGS received Defense Intelligence Agency ("DIA") accreditation at security level PL4 (multilevel top secret) for an Air Force system using the IOS on Dell hardware.

12.     In December 2008, GHS and IGS and Dell initiated discussions regarding the joint development and marketing of the IOS on Dell hardware to safeguard classified information.  In connection with those discussions, the parties (or their affiliates on their behalf) executed a Non-Disclosure Agreement ("NDA") regarding proprietary and trade secret information.

13.     On May 9, 2009, GHS and IGS, on the one hand, and Dell Marketing and Dell Federal, on the other hand, entered into a written Global Alliance Agreement (the "Global Alliance Agreement") along with other related contracts, including the Third Party Supplier Agreement ("TPSA") with Dell Products L.P.  Pursuant to the Global Alliance Agreement the parties agreed to jointly cooperate in the innovation, development, and marketing of security products and services targeted at governmental entities using classified information using the IOS on Dell hardware.  Under the Global Alliance Agreement Dell would have the exclusive right to market and sell the IOS on Dell hardware targeting governmental entities operating on top secret networks, provided Dell paid the scheduled quarterly Minimum License Commitment

("MLC") provided in the Global Alliance Agreement.[1]  The Global Alliance Agreement included a provision giving Dell the right to repayment of $5 Million in MLC payments made by Dell to IGS (a "clawback") if IGS did not achieve a top secret certification for the IOS on Dell hardware fifteen (15) months after the Global Alliance Agreement's effective date.  The NDA is incorporated by reference in the Global Alliance Agreement.  The parties called the Global Alliance product Dell/INTEGRITY Secure Consolidated Client ("DISCC").

14. In conjunction with the Global Alliance Agreement, IGS entered into the Third-Party Supplier Agreement ("TPSA") with Dell Products, dated May 12, 2009.  In connection with the Global Alliance Agreement, the TPSA provided IGS and Dell could sell IOS on Dell hardware for non-top secret applications and, if Dell's exclusivity expired under the Global Alliance Agreement or the Global Alliance Agreement expired or was terminated, for top secret applications.  The TPSA survived any expiration or termination of the Global Alliance Agreement.

15. On June 24, 2010, the parties entered into the Amended and Restated Global Alliance Agreement (the "Restated Global Alliance Agreement").  The Restated Global Alliance Agreement, by its terms, terminated and superseded the May 9, 2009 Global Alliance Agreement (with limited exceptions) in order to "reflect changes in the Global Alliance Agreement deemed necessary after the first year of performance."  The term of the Restated Global Alliance Agreement ran from June 24, 2010 until August 2, 2013, subject to certain rights of the parties to terminate for convenience at certain dates.  The NDA is incorporated by reference in the Restated Global Alliance Agreement.

---

[1] The specific terms of the parties' Global Alliance Agreement, the Amended and Restated Global Alliance, the Amendments to the Amended and Restated Global Alliance Agreement and the TPSA are identified in the parties' agreements as confidential and include trade secret information and therefore the Agreements are not attached to this Complaint.

16.     Pursuant to the Restated Global Alliance Agreement the schedule for MLC payments to IGS for the exclusive use by Dell of the IOS for top secret applications was modified.

17.     Also, the Restated Global Alliance Agreement did not require that any level of security accreditation be achieved for DISCC in order to trigger MLC payments.  Moreover, the Restated Global Alliance Agreement deleted the provision in the Global Alliance Agreement that authorized a "clawback" of MLC payments if PL4 certification (or any other top secret accreditation) was not obtained on an agreed date.  In fact, Dell was well aware at the time the Restated Global Alliance Agreement was executed that the time required to obtain government PL4 certification for DISCC was uncertain and dependent on actions of governmental authorities beyond the control of the parties.

18.     The Restated Global Alliance Agreement was amended on December 28, 2010 (the "First Amendment"), December 31, 2010 (the "Second Amendment") and January 7, 2011 (the "Third Amendment").

19.     The Third Amendment included a provision for an "On-Hold Time Frame" that required Dell – for three calendar quarters (from February 1, 2011 through October 28, 2011) (a) to pay a reduced MLC of $1,750,000 per quarter (instead of $3,750,000 per quarter) on a current basis and (b) to pay the $2,000,000 per quarter difference resulting from the "On-Hold Time Frame" reduction of MLC payments on a deferred basis in one year, *i.e.* no later than October 28, 2012.  The $1,750,000 per quarter reduced MLC payments were required to be paid within 30 days after Dell was invoiced by IGS for each of three specific "deliverables" specified in the Third Amendment.  The $6,000,000 in total deferred payments was to be paid no later than

October 28, 2012. The Third Amendment provided that the Restated Global Alliance Agreement could not be terminated without cause at any time during the "On-Hold Time Frame."

20. On August 10, 2011, Max Peterson, then Dell's Vice President/General Manager, sent written correspondence to IGS stating the payments of the MLC under the Third Amendment would be suspended until IGS obtained PL4 certification for DISCC (the "August 10 Letter"). There is no provision in the Restated Global Alliance Agreement or the Third Amendment that required DISCC to obtain PL4 certification as a condition precedent to IGS receiving MLC payments or authorized Dell to suspend MLC payments for the lack of such certification or for any other reason.

21. Dell presented in the August 10 letter along with the covering email and other communications to Plaintiffs, that it would remain fully engaged with the marketing and sales effort for DISCC and would support IGS' efforts to obtain a PL4 certification. Dell further represented the MLC payments would recommence beginning with the period following the date of PL4 certification. Notwithstanding this suspension of payments, Dell repeatedly promised continued support for DISCC and urged IGS to "stay the course" with Dell until PL4 certification could be obtained. Dell Marketing and Dell Federal represented to IGS in writing that all Dell payments would be resumed at the time PL4 certification was received.

22. Based on these representations, GHS and IGS continued to perform their obligations under the Restated Global Alliance Agreement and Third Amendment. Specifically, IGS delivered all of the three deliverables required by the Third Amendment to Dell with the final deliverable being delivered on September 30, 2011, Dell accepted all of the deliverables without objection and IGS invoiced Dell in accordance with the Third Amendment. Additionally, IGS continued (a) to provide confidential information to Dell; (b) to pursue the

PL4 certification; (c) to participate in DISCC sales meetings with Dell representatives and customers in the DISCC "sales pipeline" during which IGS' security expertise was used to develop customers' security requirements and design solutions.

23. GHS and IGS did not elect to treat the August 10 letter as a repudiation of the Restated Global Alliance Agreement and/or the Third Amendment and they did not seek out alternative partners or act unilaterally to market DISCC. GHS and IGS continued to perform the Restated Global Alliance Agreement and the Third Amendment.

24. On October 28, 2011, the last day of the "On-Hold Time Frame" and two days before the third quarterly payment of $1,750,000 of the "On-Hold Time Frame" was due, Dell sent a letter to IGS terminating the Restated Global Alliance Agreement for convenience and without cause, effective November 30, 2011 (the "October 28 Letter"). This termination was during the "On-Hold Time Frame" and therefore was ineffective.

25. On October 30, 2011 payment of $1,750,000 for the final deliverables was not made by Dell as required by the terms of the Third Amendment.

26. The required payment MLC payment of $1,250,000 for November 2011 (assuming, *arguendo*, that the Restated Global Alliance Agreement was terminated as of October 28, 2011) was not paid by Dell as required by the terms for the Third Amendment.

27. Between October 28, 2011 and January 2012, the parties continued to jointly market the DISCC system for top secret applications to a number of interested federal agencies, including the FBI, the NASIC and the AFRL. If top secret exclusivity had expired or the Restated Global Alliance Agreement effectively terminated DISCC could still be sold to such customers pursuant to the TPSA.

28.     Also during this same period, the parties discussed possible alternative business arrangements to market and sell DISCC.

29.     GHS and IGS are informed and believe and thereon allege that in January 2012, without any notice or warning to GHS and IGS, Dell communicated to the prospective customers in the DISCC "sales pipeline," that the DISCC System was not "commercially viable" and that the customers should not purchase the DISCC system from IGS, but should wait until Dell could offer an alternative system.  In fact, the DISCC was "commercially viable," and the Dell statements were made to preclude IGS from selling to prospective customers in the DISCC "sales pipeline" pursuant to the TPSA or using other hardware and breached the Restated Global Alliance Agreement and the TPSA.

30.     On January 27, 2012 (ninety days after the October 28, 2011 termination letter) Dell Marketing and Dell Federal sent IGS an email stating that "effective today" Dell is no longer offering DISCC to customers.

31.     Immediately after January 27, 2012, IGS contacted the prospective customers identified in the DISCC sales pipeline.  All but one refused to discuss the possible purchase of the DISCC system.

32.     Notwithstanding Dell's breaches, on March 15, 2012, the DIA issued a PL4 accreditation for the National Air and Space Intelligence Center ("NASIC") system using the IOS on a Dell Optiplex Computer.

33.     Despite the fact that GHS and IGS received PL4 certification, and in direct violation of the Restated Global Alliance Agreement and Third Amendment, Dell failed to resume the MLC payments as represented by Dell in writing on August 10, 2011 by Dell.

34. Dell failed to make the agreed deferred payments of $6,000,000 to IGS on October 28, 2012.

35. Plaintiffs have incurred damages in excess of $9,000,000 as a result of Dell's material breaches of the parties' written agreements.

## IV.  CAUSES OF ACTION

## BREACH OF CONTRACT

36. Plaintiffs incorporate the facts and allegations set forth in paragraphs 1-35.

37. The Restated Global Alliance Agreement, including the Third Amendment and the TPSA, were valid written contracts between Plaintiffs and Dell.  GHS and IGS fully performed all of their obligations under the Restated Global Alliance Agreement, the Third Amendment and the TPSA.

38. Despite GHS and IGS' proper performance under the Restated Global Alliance Agreement and the TPSA, Dell breached the Restated Global Alliance Agreement, including the Third Amendment, and the TPSA by:  (a) improperly suspending MLC payments to Plaintiffs as stated in the August 10 Letter; (b) attempting to terminate the Restated Global Alliance Agreement and Third Amendment on October 28, 2011, during the On-Hold Time Frame, in direct contradiction of the express terms of both the Restated Global Alliance Agreement and the Third Amendment; (c) failing to pay GHS for the final deliverable for which payment was due on October 30, 2011; (d) failing to pay any of the MLC payments Plaintiffs earned thereafter, (e) repudiating its obligation to pay the $6,000,000 in MLC payments deferred by the Third Amendment, (f) failing to resume the MLC payments when the PL4 certification was issued and (g) telling customers in the DISCC "sales pipeline" that the DISCC was not commercially viable.

39. Dell's refusal to make payments to Plaintiffs under the Restated Global Alliance Agreement and Third Amendment is a material breach of that written agreement.

40. Dell's attempt to terminate the Restated Global Alliance Agreement "without cause" on October 28, 2011, was both a material breach of the Restated Global Alliance Agreement and Third Amendment and ineffective because (a) the Third Amendment precluded termination of the Restated Global Alliance Agreement during the On-Hold Time Frame, which still was in effect on October 28, 2011 and (ii) Dell was equitably estopped by its conduct as alleged in ¶¶ 17-33 above from terminating the Restated Global Alliance Agreement without cause on 30 days' notice.

41. Dell's telling the DISCC pipeline sales customers in January 2012 that DISCC was not commercially viable was a breach of the Restated Global Alliance Agreement (if it was not properly terminated on October 28, 2011) and the TPSA.

42. As a result of Dell's material breaches of the Restated Global Alliance Agreement and the TPSA, Plaintiffs have incurred actual damages in an amount believed to exceed $9,000,000.

## V.    DAMAGES

43. Plaintiffs incorporate the facts and allegations set forth in paragraphs 1-42.

44. Plaintiffs are entitled to damages caused by Dell's breach of contract exceeding $9 million.  These damages are within the jurisdictional limits of the Court.

## VI.   ATTORNEYS' FEES

45. Plaintiffs incorporate the facts and allegations set forth in paragraphs 1-44.

46. As a consequence of the foregoing, Plaintiffs have been compelled to employ the undersigned law firm to represent them in the prosecution of this matter. Plaintiffs have agreed to

pay its attorneys a reasonable fee for their services. Accordingly, Plaintiffs request an award of their reasonable attorneys' fees and costs incurred in the prosecution of this matter pursuant to 38.001 et seq. of the Texas Civil Practice and Remedies Code.

47.     In addition, the Restated Global Alliance Agreement provides for an award of attorneys' fees. Plaintiffs therefore make demand under the applicable portions of the Restated Global Alliance Agreement for their attorneys' fees incurred in the prosecution of this matter.

## VII.   CONDITIONS PRECEDENT

48.     Plaintiffs have satisfied all conditions precedent to bring the claims asserted herein and/or such conditions precedent have been waived by the Dell defendants.

## VIII.   PRAYER

WHEREFORE, Plaintiffs INTEGRITY Global Security, LLC and Green Hills Software, Inc. request the Court to enter judgment against Defendants Dell Marketing, L.P., Dell Federal Systems, L.P. and Dell Products, L.P., as follows:

A.     On the claim for breach of contract, Plaintiffs be awarded damages in an amount to exceed $9,000,000;

B.     Reasonable attorneys' fees;

C.     Costs incurred in prosecuting the suit;

D.     Pre-judgment and post-judgment interest; and

E.     Such other relief to which Plaintiffs have shown themselves justly entitled.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Gregory J. Casas
    Gregory J. Casas
    State Bar No. 00787213
    casasg@gtlaw.com
    Janis Clements
    State Bar No. 04365500
    clementsj@gtlaw.com
    300 West 6th Street, Suite 2050
    Austin, Texas 78701
    Telephone: (512) 320-7200
    Facsimile: (512) 320-7210

**ATTORNEYS FOR PLAINTIFFS INTEGRITY GLOBAL SECURITY, LLC and GREEN HILLS SOFTWARE, INC.**

**GREENBERG TRAURIG, LLP**

Frank E. Merideth, Jr.
California State Bar No. 46266
*[Pro Hac Vice Pending]*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2101
Telephone:  (310) 586-7879
Facsimile: (310) 586-0275
MeridethF@GTLAW.com

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE**, Plaintiffs Integrity Global Security, LLC and Green Hills Software, Inc. hereby request a jury at the time of trial.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Gregory J. Casas
Gregory J. Casas
State Bar No. 00787213
casasg@gtlaw.com
Janis Clements
State Bar No. 04365500
clementsj@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

**ATTORNEYS FOR PLAINTIFFS INTEGRITY GLOBAL SECURITY, LLC and GREEN HILLS SOFTWARE, INC.**

**GREENBERG TRAURIG, LLP**

Frank E. Merideth, Jr.
California State Bar No. 46266
*[Pro Hac Vice Pending]*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2101
Telephone: (310) 586-7879
Facsimile: (310) 586-0275
MeridethF@GTLAW.com